IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PHILENA R. Cosby | ) | |
| | ) | |
| Plaintiff, | ) | No. 06 C 6188 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| WALSH CONSTRUCTION COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Philena Cosby filed a pro se complaint against her former employer, Walsh Construction Company ("Walsh") alleging sex discrimination and sexual harassment in the form of a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. ("Title VII") and retaliation in violation of Title VII.[1] Defendant has moved for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed below, defendant's motion is granted.

**FACTS**[2]

During the relevant time period, defendant was engaged as a general contractor on a project to erect new exterior canopies over the pedestrian walkways of Terminals 1 and 3 at O'Hare International Airport in Chicago, Illinois (the "Project"). Defendant hired plaintiff, a journeyman ironworker, in early May 2005 as one of the Project welders.

---

[1] Thereafter, counsel was appointed from the court's trial bar and ably represented plaintiff through these proceedings.

[2] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and accompanying exhibits, are not in dispute.

Defendant has a "zero tolerance" policy towards sexual harassment (the "Policy"). The Policy requires employees to report incidents of harassment to a supervisor. The day plaintiff began working for defendant, John Gardiner ("Gardiner"), a fellow ironworker and the ironworkers' union steward, informed plaintiff about defendant's Policy, instructed her about harassment in the workplace, and gave her a manual to read outlining the Policy which included the names and phone numbers of people to call in the event that plaintiff was harassed.

Laurel McKenzie was a project manager on the O'Hare Project ("McKenzie"). On approximately June 29, 2005, McKenzie approached plaintiff while she was working on a canopy to discuss plaintiff's work performance and apparent unhappiness on the job. The two discussed problems with the quality of plaintiff's work, certain problems plaintiff had at home, and her problems with other ironworkers. Plaintiff asserts that during this conversation she told McKenzie that two fellow male ironworkers were "sexually harassing" her by taking and hiding her tools and calling her "a dumb old girl." Plaintiff had told the offending parties to leave her tools alone because their actions were affecting her work. McKenzie does not recall this part of the conversation, but after the discussion no further tools of plaintiff's went missing.

Plaintiff encountered other incidents of offensive language while working on the Project. One day, while plaintiff and 25 to 30 other Project ironworkers were traveling on a company bus to the job site, David Brides ("Bridges"), a fellow ironworker, commented loudly that he had received a blow job from his manicurist "Ming Ling" during a regular appointment. Plaintiff complained to Bridges in a raised voice that "people don't want to hear that," and Bridges stopped his boasting. According to plaintiff she did not report this incident to a supervisor because both Bridges and plaintiff were speaking loudly enough that everyone in the bus could

2

hear them, including Paul Chen ("Chen"), a Project foreman who managed the ironworkers. Paul Chen testified that he did not remember the incident.

Some time afterwards, plaintiff saw a fellow ironworker write the words "Fuck you, Philena" on a table in the work trailer. The trailer was used as a break room where employees ate lunch and where defendant conducted weekly safety meetings for ironworkers and other staff, including McKenzie. Plaintiff testified that the words "Fuck you Diane" and "Fuck you Sherman" were also written on the table. She complained directly to the offending ironworker, but she did not report the incident. Approximately two weeks later, on July 26, plaintiff was in the trailer for lunch and saw the words "Yo-suck my dildo ho" written on the break room table. She took a photograph of the new graffiti with her cell phone, but she did not show it to anyone. After lunch, she complained to Gardiner and he promptly removed the table, replacing it with a different one. Gardiner informed McKenzie of what had happened, but plaintiff did not report the graffiti to McKenzie herself until after her termination.

*Plaintiff's termination*

Plaintiff was terminated on the afternoon of July 28, 2005. The "Termination Personnel Action Form" indicates that she was fired for poor workmanship. Handwritten notes authored by McKenzie comment that plaintiff "sets the amperage too high – resets the machine every time she goes to weld" and "will not listen to advice on how to make betters welds." Before her termination, plaintiff was told at different times that some of her welds were too convex, too wide, undercut, or otherwise unacceptable. Chen testified that he repeatedly had to instruct her how to set the equipment, prepare her work area, and execute her tasks. Despite this feedback,

plaintiff was never given a written or verbal warning that her work performance was unsatisfactory, and all of her welds were passed by the welding inspector.

When plaintiff received her final checks, she requested to meet with McKenzie to discuss her termination. During the meeting, McKenzie showed plaintiff photographs of her welding work that, plaintiff admits, depicted welds that were porous, convex, concave, and undercut. Plaintiff also reminded McKenzie about the tool hiding incident and informed her about the break room graffiti. McKenzie looked surprised when she heard about the graffiti. At the start of the shift the morning after plaintiff's termination, McKenzie conducted a meeting of the Project ironworkers to discuss defendant's anti-harassment policy and the graffiti on the break room table.

On August 9, 2005, plaintiff filed a charge of sex discrimination with the Equal Employment Opportunity Commission and received a right-to-sue letter. On November 13, 2006, she filed the complaint in the instant action.

## **DISCUSSION**

*Standard of Review*

Summary judgment is appropriate if the evidence demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Village Church v. Village of Long Grove, 468 F.3d 975, 988 (7th Cir. 2006). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits which demonstrate an absence of material fact. See Celotex, 477 U.S. at 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that

4

there is a genuine issue for trial." Fed. R. Civ. P. 56(c). When reviewing a summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The court's role "is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439, 443 (7th Cir. 1994).

*Hostile Work Environment / Sexual Harassment*

Plaintiff alleges that the taking of her tools, the lewd comments on the bus, and the graffiti on the break room tables amounted to a pattern of sexual harassment in violation of Title VII, 42 U.S.C. § 2000e-2. Title VII makes it unlawful "for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Accordingly, Title VII prohibits an employer from "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To establish a prima facie case of sexual harassment under Title VII, plaintiff must demonstrate that: "1) she was subjected to unwelcome harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability." Boumehdi v. Plastag Holdings, LLC, 489 F.3d 781, 788 (7th Cir. 2007).

Not all inappropriate behavior in the workplace rises to the level of a hostile environment. For behavior to be actionable, the plaintiff must establish that it is "severe or

5

pervasive enough to create an abusive working environment." Jackson v. County of Racine, 474 F.3d 493, 499 (7th Cir. 2007). One extreme act may rise to an actionable level, as could a string of less severe acts. Smith v. Sheahan, 189 F.3d 529, 534 (7th Cir. 1999). A hostile work environment claim should be judged by both an objective and subjective standard. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The work environment cannot be described as "hostile" for the purposes of Title VII unless a reasonable person would find it offensive and the plaintiff actually perceived it as such. Hostetler v. Quality Dining, Inc., 218 F.3d 798, 807 (7th Cir. 2000).

Plaintiff's subjective belief that the work environment was hostile is not contested. Instead, defendant argues that plaintiff fails to raise a triable issue of fact whether the work environment was objectively hostile. In determining whether a plaintiff's work environment is objectively offensive, "the court must consider all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interferes with an employee's work performance." Luckie v. Ameritech Corp., 389 F.3d 708, 714 (7th Cir. 2004). The three circumstances cited by plaintiff, considered as a whole, fail to rise to the level of sexual harassment for the purposes of a Title VII claim.

The first incident, where the male ironworkers allegedly hid plaintiff's tools and called her "a dumb old girl," may have interfered with plaintiff's work, but there is no evidence to show that this incident was based on her sex, was sexual in nature, or that it rose to a level of severity that rendered the working environment abusive. Further, as defendant notes, the behavior ceased after plaintiff told the offending parties to stop and reported the incident to McKenzie.

6

The bus incident also fails to raise triable issues of material fact. The comments on the bus were indisputably unwelcome and sexual in nature, but plaintiff has offered no evidence to show that this isolated incident was severe or pervasive. The Seventh Circuit has held that "occasional vulgar banter, tinged with sexual innuendo of coarse or boorish workers generally does not create a work environment that a reasonable person would find intolerable." Baskerville v. Culligan Int'l. Co., 50 F.3d 428, 430 (7th Cir. 1995) (distinguishing on the one hand between "sexual assaults, physical contact, intimidating words or acts, uninvited sexual solicitation, intimidating words or acts, obscene language or gestures, pornographic pictures" and "occasional vulgar banter on the other."). Although sexual in nature and subjectively unwelcome, Bridges' comments were not objectively intolerable. Bridges was boasting loudly on a busload of mostly male ironworkers. His comments about his sexual exploits, and use of explicit language, while reprehensible, were generally directed to anyone in earshot, both male and female, and not at plaintiff exclusively or women in general. Moreover, plaintiff put an end to the comments herself. She told Bridges "people don't want to hear that," and he immediately stopped his boasting. By all accounts, this was an isolated incident of vulgar, coarse banter, and there was nothing left for defendant to do to remedy the situation.

The final allegations concern the graffiti written on the break room table. Although the graffiti was sexual in nature and offensive, it was not threatening and was void of humiliating personal references that could have rendered the graffiti objectively hostile. It was of the generic, unfortunately common variety of bad-mouthed vandalism frequently found in locker rooms, bathroom stalls, and other such places, and Gardiner removed and replaced the offending

7

table immediately after plaintiff complained. Further, plaintiff has not alleged that the graffiti unreasonably interfered with her work performance.

Considering the totality of the circumstances, the court finds that plaintiff's allegations fail to establish the third prong of a prima facie case for hostile work environment based on sexual harassment. Thus, although the parties hotly contest the issue of employer liability, it is unnecessary for the court to reach the merits of these arguments. Consequently, defendant's motion for summary judgment as to plaintiff's claim of hostile work environment is granted.

*Retaliation*

Plaintiff alleges that defendant retaliated against her for reporting the harassment by terminating her employment. Title VII prohibits retaliation against an employee who opposes impermissible discrimination. Durkin v. City of Chicago, 341 F.3d 606, 614 (7th Cir. 2004). A plaintiff may pursue a retaliation claim by presenting either direct or indirect evidence. Boumedhi, 489 F.3d at 792. Plaintiff has elected to proceed under the former method. Under the direct method, a plaintiff must show that "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; (3) there is a causal link between the protected activity and the adverse action." Parkins v. Civil Constructors, 163 F.3d 1027, 1038 (7th Cir. Ill. 1998). If the plaintiff establishes these elements, the burden shifts to the defendant to provide a non-invidious reason for the adverse action. Id. at 1038-39. If a legitimate reason is produced, to prevail plaintiff must prove this reason is pretextual. Id.

Plaintiff's retaliation claim fails because she cannot establish a causal link between her reporting the alleged sexual harassment and her termination. Plaintiff asserts that during the roughly three months that she worked for defendant, she was performing her job satisfactorily,

she received no written or verbal warnings about sub-par performance, and all of her welds passed inspection. She argues essentially that everything was going well until she made a formal complaint to Gardiner about the graffiti on July 26. Two days later, defendant fired her in retaliation for making the complaint, on the pretext of poor workmanship. She relies heavily on the absence of foundation or paperwork documenting her poor performance, and the alleged lack of responsiveness to her complaints about harassment. Defendant maintains that plaintiff was terminated for poor performance and points to the lengthy testimony of Chen and McKenzie discussing visual inspection of plaintiff's actual welds and photographs of her welds.

As described above, there is evidence of legitimate, independent causes for plaintiff's termination. As a Project foreman, Chen inspected not only plaintiff's final welds, but the manner in which she approached her work. He had the opportunity to observe her work preparation, her handling of the equipment, and her actual welding technique. He also repeatedly instructed plaintiff how to use specific machines and how to improve her welds. Moreover, he was able to compare her work to that of other ironworkers and found it to be lacking. The record shows that McKenzie also evaluated plaintiff's welding and overall job performance. Although she may not have been a certified welding inspector, McKenzie was a Project manager, and it was within her discretion to evaluate plaintiff's work. She approached plaintiff at her work site in June to discuss plaintiff's problems on the job and McKenzie commented on the excessive width and porosity of plaintiff's welding. Although the independent welding inspectors may have ultimately passed the work, defendant was not satisfied with plaintiff's overall job performance and exercised its right to terminate her on that basis. Indeed, plaintiff herself acknowledged that her welds were "unsatisfactory." Plaintiff's

9

mere speculation, absent direct evidence of a causal connection between her reporting the graffiti and her termination, fails to establish a prima facie case of retaliation. Therefore, defendant is entitled to summary judgment on this claim.

## **CONCLUSION**

For the reasons stated herein, defendant's motion for summary judgment is granted.

**ENTER:** **April 13, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**